Chief Justice Robertson
delivered the Opinion of the Court.
In February, 1822, Henry Williams sold to Archibald S. Letcher one hundred and eighty four acres of land, at six dollars an acre, amounting, in the aggregate, to one thousand one hundred and four dollars, payable in brick, money, and brick work, at various specified times; and, by an article of agreement, signed by both contracting parties, covenanted to convey the legal title on receiving the entire consideration. The vendor having died before he had received the whole consideration, Walter Williams, who had been appointed guardian to his infant children, entered into some unexplained arrangement with Letcher and William E. Wilson, the defendant in error, in consequence of which he gave to Wilson the following obligation :—
“ I do oblige myself, as guardian of the heirs of Henry Williams, deceased, to agree that there shall be a good and sufficient title for one hundred and eighty four acres of land, sold by Henry Williams, in his life time, to A. S. Letcher, and by him to Win. E. Wilson — the title to be made by said heirs to said Wilson, as soon as said Wilson shall pay to Walter Williams, guardian for said heirs, one hundred and eighty two dollars, sixty cents. Given under my hand, this 7th of May, 1828.
W. Williams, Guardian far the heirs of IL Williams, dec’d.”
“The whole consideration, seven hundred and fifty dollars, for which the heirs are bound to convey, agreeable to the above — it is understood that the land is to stand as security until the money is paid.”
W. Williams, Guardian»”
“ Teste — James Jeffries. ”
Note for part of the contract, judgment on it, and bill in chancery, with injunction.
Answer: cross bill and answers —new parties and answers.
Afterwards, Williams having obtained a judgment against Wilson, on a note which he had given for the hundred and eighty two dollars, sixty cents, Wilson filed a bill in chancery against Williams, alleging that he-had bought the land from Williams, for seven hundred and fifty dollars, and had paid five hundred and sixty eight dollars thereof — u some time in the year 1828, and for the balance gave his note” upon which the judgment had been obtained ; alleging also, that he did not beiieve that Williams had title to the land, or could make a good title ; and praying for an exhibition by Williams, of his documents of title, and for a conveyance to himself of the legal title, if a good title should be exhibited, but, otherwise, for a rescission of the contract, and finally, for an injunction to the judgment.
Williams, in his answer; says that Henry Williams had sold the land to Archibald S. Letcher, for seven hundred and fifty dollars; of which Letcher had paid five hundred and sixty eight dollars prior to the vendor’s death ; that, after the death of Henry Williams, Wilson bought the land from Letcher, and that, “ at the request of all parties,” he (the respondent,) surrendered Letcher’s bond, took Wilson’s in lieu of it, and gave the obligation which has been quoted. He also averred, that his wards had a good legal title to the land, and made his answer a cross bill against Wilson and Letcher, which they answered. Wilson reiterated the substance of his bill. Letcher stated, that he had agreed to give one thousand one hundred and four dollars for the land, and had paid the whole of the price, except one hundred and eighty two dollars, sixty cents, before the death of Henry Williams ; that there was no written memorial of his contract for the land ; that, after the death of Henry Williams, the contract was rescinded, by himself and Walter Williams, the guardian ; that Wilson afterwards bought the same land from the guardian, for seven hundred and fifty dollars, and that he (Letcher,) 11 had nothing to do with their contract,” or “with Wilson.”
Walter Williams afterwards made his wards parties to an amended cross bill. And they, by a guardian ad litem, answered, and exhibited the documents of their title. *159 but did not admit that they had any knowledge of any sale of the land by their ancestors.
Decree — and writ of error.
after the decree, should not be allowed.
When a rescission of a contract of sale is decreed, restoration should he ordered of the things sold.
One makes a bargain for the sale of land, receives part of the pay, and dies: his vendee transfers the bar gain to a third party, and with the latter, the guardian of the decedent’s children enters into f(ofdoubt" ful construction as to its obligation on himself, but,) stipulating that his wards shall make a title as soon as a balance of the consideration is paid — a bill for a rescission of the contract, which treats it as one binding the guardian himself to convey, alleging that he has no title, is erroneous and insufficient. The decedent's vendee, and his heirs (the guadian’s wards) ■ ere necessary parties. It appearing, in such case, that the complainant might have a specific execution, he is not entitled to a rescission, of the contract.
The circuit court decreed a rescission of the contract with Wilson, a perpetuation of the injunction to the judgment, and the payment, by Walter Williams, to Wilson, of five hundred and sixty eight dollars, with legal interest thereon from the 31st of December, 1838, ’■'■until paid,” and the costs of the suit at law, after deducting thirteen dollars, assessed as the excess of rents over improvements.
This writ of error is prosecuted to reverse that decree. 'The assignment of errors is sufficiently comprehensive to embrace every point presented in the record, and will not, therefore, be particularly noticed.
The circuit court erred in decreeing interest, accruing after the decree; and also in rescinding the contract, without ordering restitution of the possession on the payment of the amount decreed. But the decree is, in other respects, more radically erroneous.
I. The record does not justify the rescission of the contract. We deem it unnecessary now to ascertain the true construction and effect of the writing given by the plaintiff in error ; for whether it be considered an agreement by him merely to give his assent, as guardian, to a conveyance by his wards, to Wilson, instead of Letcher,with W'hom their ancestor had made the contract for the land/ or a covenant binding him, as guardian, to have the title made to the defendant ; or whether it should be deemed an obligation binding on the plaintiff as guardian merely, or in his own right, is not essential to a solution of the question presented by the decree for rescission. If every thin lars were conceded, still the decree rescinding the contract cannot be approved. most unfavorable to the plaintiff in those particu-
The conveyance was not, as alleged in the bill, to have been made by Walter Williams, but by his wards. Ah though the true character of the contract has not been *160 clearly developed, and although some effort seems to have been made to misrepresent or conceal it, we are of opinion that, whatever may be its true nature and effect in other respects, it was not a sale by the plaintiff to the defendant; but that it was, as represented by the plaintiff, a recognition of a transfer from Letcher to the defendant, and an undertaking (if a covenant at all by the plaintiff, for a conveyance,) that the heirs of Henry Williams should make a deed to the defendant, instead of Letcher, and with Letcher’s consent, in consideration of his contract with Henry Williams, and for what had been paid by him to Henry Williams, and that which was assumed to be paid for him, (Letcher,) by the defendant to the plaintiff, as the guardian of Henry Williams’ infant heirs. And in this aspect of the case, not only are the allegations of the bill erroneous and insufficient, but it seems to us, that, if the bill had contained correct and appropriate allegations, Letcher, as well as Henry Williams’ heirs, should have been made a party by the plaintiff, before he could have entitled himself to relief in equity, either by a rescission, or a specific execution. He certainly could not properly obtain a decree for a conveyance to himself, unless Letcher, with whom he made the contract for the land, and Henry Williams’ heirs, who were liable for the title to Letcher, had been made parties to his bill. And knowing, as he is presumed to have known, all the facts connected with the character of Henry Williams’ sale to Letcher, and with the agreement between himself and the plaintiff, he should not be entitled to a rescission in chancery, without first seeking, in the appropriate mode, to obtain a conveyance, by which all persons concerned, would be concluded, and an end would be put to further controversy respecting the original sale, or the subsequent contract with Letch-er and the plaintiff. It does not appear that the contract between Henry Williams and Letcher, was ever cancel-led ; and even if the plaintiff had attempted its cancelment, all his efforts would have been ineffectual. If then^ the contract between the plaintiff and defendant be rescinded,what will become of the contract between Letch-er and Henry Williams, or the agreement between the *161 defendant and Letcher ? And why should the defendant have a decree for rescinding his agreement with the plaintiff, without making Letcher, who would be affected by that rescission, and Henry Williams’ heirs, who may be able and willing to make a title, parties to his bill for relief- The fact that they are parties to the plaintiff’s cross bill, would not authorize a decree in the defendant’s favor, affecting their rights-or interests immediately or incidentally — directly of indirectly. It results, also, that the personal representatives of Henry Williams would be proper parties to any bill for relief.
Where the’ hill for rescission (in such case,) alleges that complainant paid a sum of money on account of the purchase— but does not say to whom, whether to the guardian, or to the decedent’s ven-dee, and the defendant, tho’ he admits that the compl’t “.was to stand in L’s shoes,” (i. e.in the place of the decedent’s ven-dee,) yet denies that he (the guardian) ever-received a cent, a decree against him for repayment of the money cannot he sustained. In this view of the case also, the wards and decedent’s vendee were necessary parties.
II. The decree against the plaintiff for five hundred and sixty eight dollars cannot be sustained; It is true, that the plaintiff says, in his original answer, that the defendant “ was to stand in Letcher's shoes.” But still it does not appear, that the defendant ever paid a cent to either the plaintiff, or Letcher; nor does it appear that the plaintiff had ever received a cent in consideration of either of the contracts respecting the land. The defendant alleges, that he bought the land from the plaintiff, and, during the year 1828, paid (without saying to whom) five hundred and sixty eight dollars of the price. The plaintiff denies that he ever received from the defendant, any part of the five hundred and sixty eight dollars, and avers that the defendant bought the land from Letcher. Letcher, in bis answer to the plaintiff’s cross bill, says that lie “ had nothing lo do with Wilson or his contract.” The writing between the plaintiff and defendant, as well as some extraneous evidence, tends strongly to shew that the defendant did not buy the land from the plaintiff, but from Letcher, and there is no proof in the record tending, in any degree, to shew that the plaintiff ever paid to any person, any part of the price which he was to give for Letcher’s claim to the land, and for the plaintiff’s agreement that his wards should make the title to the defendant in lieu of Letcher.
Under such circumstances, it is not consistent faith equity to decree against the plaintiff five hundred and sixty eight dollars, even if his agreement should be construed as imposing on him any personal liability. Unless the defendant had paid that sum to the plaintiff, or *162 to Letcher, he is not entitled to a decree for it; and, as to so much, the undertaking of the plaintiff (who was a stranger) would have been without consideration. It is also obvious, that, before he could be entitled to a decree for the five hundred and sixty eight dollars, he should make Letcher and Henry Williams’ representatives parties to his bill, if, as we have supposed from the record as it is now exhibited, Wilson bought from Letcher, and Williams agreed only that the title should be made to him instead of Letcher. For, in such a case, if the consideration paid by Letcher to the intestate, be recoverable, Letcher who paid, and the representatives of him who received, should be made parties to the suit. The plaintiff should not, at the utmost, be considered more than a collateral guarantor.
Wherefore, it is decreed by this court, that the decree of the circuit court be reversed, and the cause remanded, with leave to amend the bill, and to make the proper parties; and with instructions (if the amendment shall not be made in convenient time) to dissolve the injunction, with damages, and dismiss the bill, with costs.